UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MATTHEW GIUCA, M.D. and CARL SCHMIGELSKI, M.D.

                              Plaintiffs,                  **REPORT AND RECOMMENDATION**

           -against-                                    CV 21-3814 (GRB)(ARL)

NASSAU ANESTHESIA ASSOCIATES, P.C. and ENVISION
HEALTHCARE CORPORATION,

                              Defendants.
------------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the Court, on automatic referral from District Judge Brown, is the plaintiffs' motion for leave to amend the complaint to add a claim for punitive damages in connection with their fourth cause of action for a violation of Section 741 of the New York Labor Law ("NYLL"). The defendants oppose the motion. For the reasons stated below, the undersigned respectfully recommends that the motion be denied.

## BACKGROUND

On July 7, 2021, the plaintiffs, Matthew Giuca, M.D. ("Giuca") and Carl Schmigelski, M.D. ("Schmigelski"), commenced this action against their employer, Nassau Anesthesia Associates, P.C. ("NAA") and Envision Healthcare Corporation ("Envision"), for breach of contract, violations of Article 6, Section 215 and Section 741 of the NYLL, violations of the New York State Human Rights Law ("NYSHRL"), violations of the Americans with Disabilities Act ("ADA") and violations of the Family Medical Leave Act ("FMLA"). The crux of the plaintiffs' complaint is that, during the COVID-19 pandemic, the hospital to which they were assigned by the defendants refused to provide appropriate personal protective equipment ("PPE"), creating a severe public safety risk to physicians, staff and patients. Specifically, the

1

plaintiffs allege that when they complained to the hospital about the need for appropriate PPE, their employers retaliated against them for their complaint about the attendant safety risks resulting from the lack of adequate PPE. For example, the plaintiffs claim that in retaliation for their complaints, the defendants deducted 30% from their earned wages from April 2020 to May 2020 and subsequently deducted an additional 15% through June 2020. In addition, unrelated to the healthcare crisis, the plaintiffs allege that they complained to human resources and other senior executives at the defendants about the unlawful racist and sexist misconduct of one of the defendants' other physicians towards other employees at the hospital. The plaintiffs contend that they were retaliated against for making those complaints as well. Finally, Giuca claims that he suffers from a disability that was exacerbated by the defendants' mistreatment and that the defendants have failed to satisfy their obligations under the ADA.

On September 21, 2021, the defendants filed an answer to the complaint. Shortly thereafter, Magistrate Judge Tomlinson scheduled an initial conference in this matter. However, before the conference was held, the case was reassigned to the undersigned. On November 8, 2021, the undersigned directed the parties to submit a Rule 26(f) report, which they did. On January 12, 2022, the undersigned then held a conference with the parties at which time their proposed discovery schedule was adopted. Among other things, the parties proposed that any motion or stipulation to amend the pleadings would be filed by January 10, 2022.

On January 17, 2022, the Court entered the Scheduling Order for this case. Because the proposed deadline for moving to amend pleadings had already past, the Court extended that deadline to February 14, 2022. Then, on February 14, 2022, the plaintiffs filed an amended complaint without leave of Court.[1] In fact, the plaintiffs did not file a motion seeking leave to

---

[1] A copy of the amended pleading remains on the docket sheet.

2

amend the complaint until April 1, 2022. Four days later, that motion was denied as being in violation of the undersigned's bundle rule. The plaintiffs renewed their motion on April 22, 2022, the motion now before the Court.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07–CV–3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir.2008) (*per curiam*) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."). Nevertheless, where, as here, a Court has issued a scheduling order, pursuant to Rule 16, such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

The plaintiffs, as the movants, have the burden of proving good cause. *See Ahmed v. Astoria Bank*, No. 14-CV-4595, 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015). If a court determines that good cause has been satisfied, the court will then turn to whether the liberal standards of Rule 15 have been met. *Id.* In any case, "a finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "A party has not acted diligently

3

where the proposed amendment to the pleading is based on information that the party knew, or should have known, in advance of the deadline sought to be extended." *Ahmed*, 2015 WL 4394072, at *2 (citations and internal quotation marks omitted). "Although diligence is the primary focus of a 'good cause' analysis, a court may, in its discretion, also consider other factors, such as whether 'allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.'" *Id*. (quoting *Kassner v. 2nd Ave Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007)).

As noted above, in this case, the plaintiffs' deadline to seek leave to file an amended pleading was February 14, 2022. ECF No. 20. The plaintiffs first attempted to file a motion to amend on April 1, 2022 and then refiled a fully briefed motion on April 22, 2022. As such, the instant motion implicates Rule 16. Although the motion was only filed two months after the deadline for doing so, nothing in the plaintiffs' papers suggest that counsel was lacking any information needed for the proposed amendment. In fact, according to the plaintiffs' moving papers, the amendment to the complaint that they are seeking was prompted by an amendment to Sections 740 and 741 of the NYLL, New York's whistleblower law, which was enacted on October 28, 2021 and took effect on January 26, 2022, prior to the deadline for amending pleadings.

Moreover, even if the Court were to disregard the timing of the motion and analyze it pursuant to Fed. R. Civ. P. 15(a), the Court would recommend denying the motion as the proposed amendment is futile. As the defendants correctly argue, the plaintiffs seek to add a claim for punitive damages in connection with their existing claim under NYLL § 741. At the time the plaintiffs' claims accrued, NYLL § 741 did not provide for the recovery of punitive damages. Indeed, the legislative changes on which the plaintiffs' now rely did not take effect

4

until January 26, 2022. However, a review of the plaintiffs' complaint reveals that all of the underlying conduct occurred prior to the amendment.

For example, the plaintiffs allege that the defendants retaliated against them in the spring of 2020 for raising concerns regarding the availability of PPE. Compl. ¶ 46. Specifically, the plaintiffs claim that in April 2020, Giuca was removed from his leadership role as the Director of Preadmissions Testing after complaining about the need for PPE. *Id.* ¶ 50. The plaintiffs also assert that, around that same time period, Giuca was belittled during a conference call. *Id*. ¶ 56. Subsequently, in May 2020, in light of what Giuca claims was "unlawful mistreatment," he resigned. *Id*. ¶ 60. Giuca then signed an employment agreement with another hospital. *Id.* ¶ 63. Giuca claims that in further retaliation for his complaints about PPE, the defendants then threatened to sue him for violating his employment agreement. *Id*. ¶ 64.

The plaintiffs also allege that Schmigelski was retaliated against in late March 2020 after he too complained about the lack of PPE. *Id.* ¶ 57. For example, the plaintiffs claim that their liaison with the hospital allegedly advised another physician that Schmigelski would not allow an emergency intubation team to conduct intubations until a written contract was signed. *Id.* Schmigelski asserts that this false narrative damaged his reputation as it made him appear not to agree to take important action during the early surges in the pandemic. *Id.* ¶ 58. Then, in June 2020, Schmigelski was removed from his role as Chief of NAA, a position that he held for more than a year and a half. *Id.* ¶ 74. He was also passed up for a promotion to Regional Medical Director. *Id.* ¶ 75. Schmigelski contends that these employment decisions were the result of his complaints.

Similarly, the complaints lodged by the plaintiffs about the conduct of a fellow physician were made between February 2020 and January 2021. *Id.* ¶¶ 89-113. To this end, Giuca claims

5

that he suffered from numerous instances of retaliation for complaining about his colleague's conduct in April 2021, prior to the amendment to NYLL § 741. *Id.* ¶¶ 116-17. For example, he alleges that around that time he was asked to move to Florida and ultimately had his privileges canceled at his former hospital. *Id.* Finally, with respect to the defendants' allege failure to engage in an interactive process concerning Giuca's disability, Giuca contends that he was denied an accommodation in or around December 2020 in retaliation for the complaints that he had made. *Id.* ¶¶ 121-24. Once again, that alleged conduct predates the amendment to NYLL § 741.

In sum, it is clear from the complaint, that all of the conduct about which the plaintiffs complain occurred prior to the amendment to the NYLL. Neither the language of the statute nor legislative history indicate a clear intent that the amendment adding punitive damages apply retroactively to acts that occurred earlier. It is well settled that "when a statute 'is ambiguous or contains no express command' regarding retroactivity, a reviewing court must determine whether applying the statute to antecedent conduct would create [a] presumptively impermissible retroactive effect[]." *Durr v. Slator*, 558 F. Supp. 3d 1, 41 (N.D.N.Y. 2021) (quoting *Weingarten v. United States*, 865 F.3d 48, 55 (2d Cir. 2017)). If it would, then the court may not apply the statute retroactively absent clear congressional intent to the contrary. *Id*; *see also Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997), as amended on denial of reh'g (Sept. 25, 1997) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1497, 128 L. Ed.2d 229 (1994) (the presumption against retroactive legislation is deeply rooted in our jurisprudence)); *Reynolds v. Frank*, 786 F. Supp. 168 (D. Conn. 1992) (holding that section of Civil Rights Act authorizing recovery of punitive damages could not be applied retroactively to discrimination claim which arose prior to Act's effective date)). There is no question that a claim based on

Section 741, as amended, has the potential to increase the defendants' liability, and thus, has an impermissible retroactive effect. Accordingly, the undersigned also finds that the proposed claim for punitive damages under Section 741 is futile, and therefore, recommends that the motion be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
August 10, 2022

                                                  /s/
                                       ARLENE R. LINDSAY
                                       United States Magistrate Judge